COMMONWEALTH *vs.* ALAN TROPEANO.

Suffolk.    January 8, 1974.—February 8, 1974.

Present:   TAURO, C.J., REARDON, BRAUCHER, HENNESSEY,
& KAPLAN, JJ.

*Constitutional Law,* Due process of law. *Practice, Criminal,* Empanelling of jury, Challenge of jurors. *Witness,* Child witness.

At the trial of a criminal case, although a refusal by the judge to make known to the defendant his private conversation with a prospective juror constituted error, such error was "harmless beyond a reasonable doubt" in light of the facts that the defendant exercised a peremptory challenge whereby the juror was excused and that the defendant acknowledged that he still had a sufficient number of peremptory challenges available for use with respect to other jurors if they had been needed. [567-568]

At the trial of a criminal case, evidence that the defendant surreptitiously entered a child's bedroom at night by breaking through a closed and screened window, that, when discovered, he was naked in bed with the child, who was also naked, and that he had introduced his fingers into her vagina, was sufficient to support a finding that he was guilty of breaking and entering a dwelling at nighttime with intent to commit rape. [568-569]

INDICTMENTS found and returned in the Superior Court on December 13, 1971.

The cases were tried before *Linscott,* J.

*David M. Skeels* for the defendant.

*William F. Linnehan,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J. The defendant Alan Tropeano, having been found guilty in the Superior Court of drunkenness, indecent assault and battery on a child under fourteen years, and breaking and entering a dwelling house in the nighttime with intent to commit rape, appeals pursuant to G. L. c. 278, §§ 33A-33G, urging two grounds for reversal. First he contends that he was denied due process of law as a result of the trial judge's refusal to inform him of the nature and content of an in-court, private conversation between the judge and a prospective juror who had requested to speak with the judge after inquiry had been made whether any juror had a personal interest in the case. The judge ruled that the juror stood indifferent, but refused to inform the defendant of the basis of the juror's concern, or the reasons for his ruling. The defendant then exercised one of his peremptory challenges and the juror was excused. The second argument goes to the sufficiency of the evidence upon which the defendant was found guilty of breaking and entering a dwelling at nighttime with intent to commit rape.

The judge's refusal to make known his private conversation with the prospective juror constituted error. *Commonwealth* v. *Robichaud,* 358 Mass. 300 (1970). See *Commonwealth* v. *Snyder,* 282 Mass. 401 (1933); *Hopt* v. *Utah,* 110 U. S. 574 (1884); *Shoultz* v. *Florida,* 106 So. 2d 424 (Fla. 1958). We believe, however, that in light of the defendant's exercise of a peremptory challenge whereby the juror was excused, such error was "harmless beyond a reasonable doubt." *Chapman* v. *California,* 386 U. S. 18, 24 (1967). In oral argument, the defendant acknowledged that despite having used a peremptory challenge with respect to the juror in question, he still had a sufficient number of peremptory challenges available for use with respect to other jurors if

they had been needed. Thus, the defendant was not subsequently forced to accept a juror he would have otherwise challenged peremptorily. At best, the defendant's argument is that he was forced, as a result of the judge's action, to challenge a juror who might very well have been impartial. But even if that were the case, we fail to see how the defendant was prejudiced as a result. Since the juror (challenged by the defendant) was replaced by one acceptable to him, the defendant's right to an impartial jury was not impaired to the extent of requiring a new trial.

We turn now to the sufficiency of the evidence upon which the defendant was found guilty of breaking and entering a dwelling house in the nighttime with the intent to commit rape. The pertinent evidence is summarized. The victim, an eight year old girl (at the date of trial), and her two young brothers were in the care of a baby sitter during the evening of the alleged attempted rape. The baby sitter testified that within an hour following the mother's departure for the evening, the defendant and a friend came to the apartment requesting permission to consume the cans of beer they had with them. The baby sitter, who knew the defendant and was aware that he was acquainted with the mother and her children, allowed them to come in. Moments later, the baby sitter discovered the defendant in the little girl's bedroom, sitting on the edge of her bed, talking to her. The baby sitter promptly told the defendant to leave.

Later the same evening between 8:30 and 9 P.M. the baby sitter entered the child's room and noticed two bare feet protruding from underneath the blanket. He pulled the blanket back and saw the defendant and child together in bed. He testified that the defendant "wasn't wearing anything as far as I know," and that "the young lady was naked."

When informed of the incident, the mother returned home immediately and found her daughter "crying and shaking and scared." When she asked her what had happened to her nightgown, she replied, "Alan [the defendant] took it off."

The child testified as to the details of what had occurred. She stated that she heard the defendant at her bedroom win-

dow, and that he broke the screen and came in.[1] After this, she continued, the defendant took off her nightgown, undressed himself, got in bed with her and began fondling her "private parts," continuing until interrupted by the baby sitter's entry into the room.

The foregoing evidence comprises the basis for the jury's finding that the defendant broke and entered the child's bedroom on the evening of October 28, 1971, with the intent to rape her. We think that the evidence gives rise to " 'reasonable and possible' inferences supportive of the jury's verdict." *Commonwealth* v. *Lussier, ante,* 414-420. The defendant was shown to have surreptitiously entered the child's bedroom at night by breaking through a closed and screened window. When discovered, he was in bed with the child. She was naked. So was he. Furthermore, according to the child's testimony, the defendant had introduced his fingers into her vagina. On this evidence, we believe the jury were warranted in inferring that the defendant intended to have sexual intercourse with the child. In view of the victim's age, force or consent were not essential elements. See G. L. c. 265, § 23, as appearing in St. 1966, c. 291.

*Judgments affirmed.*

---

[1] There was other evidence that the screen had been forced.